## Mitchell Dinnerstein

**From:**      CHICHALKI RICHARD AMMAR (92036054)

**Sent Date:** Thursday, November 6, 2014 2:21 PM

**To:**        md@dinnersteinlaw.com

**Subject:**   Memorandum in Aid of Sentencing P: 1-5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X X X X X X X X X X X X X X X X X X X

UNITED STATES OF AMERICA

                V.

RICHARD CHICHAKLI

MEMORANDUM OF AID OF SENTENCING

09-CRI-1002 (WHP)

X X X X X X X X X X X X X X X X X X X

RICHARD CHICHAKLI is scheduled to be sentenced on December 4, 2014 following a guilty verdict

rendered in a Jury trial. Chichakli was convicted on Conspiracy to violate The International Economic Power Act

in violation of Title 50 USC - Section 1705, and Title 18 USC - Section 371, Conspiracy to commit money
laundering

in violation of Title 18 USC Section 1956(h), Conspiracy to commit wire Fraud Title 18 USC - Section 1349, and
Six

counts of wire fraud in violation of Title 18 USC, Section 1343 and 2.

The Probation Report accurately points out that Mr. Chichakli has no prior convictions; thus, he is category

one criminal history.

The guideline range of 46 to 57 months well exceeds what is sufficient to address the purpose of
sentencing

enumerated in 18 United States code 3553(a). In that respect, it runs afoul of Section 3553(a)'s Parsimony
Clause,

which direct the Court to fashion a sentence no greater than necessary to meet the statutory sentencing purpose.

When the idiosyncrasies of the Sentencing Guidelines are applied to this case and to Mr. Chichakli role and

conduct in particular in the alleged crime, their shortcomings are apparent.

A Guideline sentence driven so heavily by the enhancements would not reflect the nature and circumstances

of the alleged offense, the role of Mr. Chichakli in it, and his history and characteristics. In the instant case the

prosecutor is seeking enhancement to more than triplicate the punishment suggested by the guidelines, resulting

## Mitchell Dinnerstein

in the base crime constituting less than 30% of the punishment the prosecutor is trying to have imposed.

The enhancement of 16 (Sixteen) points add more than 235% of the defendant's adjusted offense level which is is Seven (7) under the Guidelines. See UNITED STATES V. GRIER, 475 F.3d 556, 566 (3d Cir. 2006) SENTENCING

ENHANCEMENTS BECOME THE TAIL WHICH WAG THE DOG OF THE SUBSTANTIVE OFFENSE"

   The defendant objects to the Guidelines analysis contained in the report. The report suggests that the proper offense level is (23) in a criminal history Category I.  This yield a suggested guideline range from 46 - 57 months. The defendant believes that he is appropriately placed at Criminal Category I at offense Level 11. This analysis would  suggest a guideline sentence of  08 -14 months.

   The Probation Department is using the 2013 Guidelines Manual, incorporating all guideline amendments, to determine the offense level. USSG Section 1B1.11

   The Supreme Court of the United States has urged each sentencing Court to consider ALL mitigating factors and to reject policy statements of the guidelines that restrict the use of mitigating factors. See United States V. Rita, 551 U.S. 338 (2007); United States V. Gall, 552 U.S. at 50 n.6, 58-60 (2007).

"Gall" at 59 n.11 requires that a sentencing Court consider all "kinds of sentencing available" under Section 3553 even if the Guidelines only recommend a prison sentence. In fact Courts are now invited to consider arguments that the applicable guidelines fail properly to reflect. Section 3553(a) considerations, reflect an unsound judgment, do not treat defendant characteristics in the proper way, or that different sentence is appropriate regardless of Guidelines. Rita, 127 S. Ct. at 2465.

### U.S. SENTENCING GUIDELINES

   Defendant DOES NOT AGREE with the calculation of the Probation Department, set forth below and which adopt the calculation set forth by the prosecutor.  Defendant disagrees with the calculation as follows:

Enhancement for Obstruction of Justice is unwarranted

The TWO POINT (2) enhancement for Obstruction of Justice is NOT WARRANTED NOR SUPPORTED BY EVIDENCE.  In fact, the government in seeking this enhancement is violating its own theory regarding alleged OWNERSHIP OF SAMAR AIRLINE by Chichakli.   Such ownership NEVER EXISTED ACCORDING TO THE

## Mitchell Dinnerstein

TESTIMONIES OF GOVERNMENT OWN WITNESSES at trial, AND TO THE COURT'S OWN DECISION.

(see Court order of Oct/16/2014 Page: 18 Line: 7-10).

The Government based the alleged that "Obstruction of Justice" was manifested by Chichakli's hiding his

ownership of Samar Airlines from OFAC.  The government stated:

> "During OFAC's investigation of the airplane transactions and the fund wired, Chichakli submitted
>
> documentation to OFAC which contained false information IN RELATION TO HIS OWNERSHIP
>
> OF SAMAR AIR." (PSR at# 44)

IF FACT, the TRIAL CLEARLY ESTABLISHED THAT CHICHAKLI IS NOT AN OWNER OF SAMAR AIRLINE

as the testimony of government witnesses CLEARLY AND IRREFUTABLY stated.    Case agent Paul Larsen

TESTIFIED that Chichakli was never an owner of Samar Air.

(See Trial Transcripts (TR) Page: 1236 Lines: 15-22 and TR - page: 1267 Line: 6-19)

Furthermore;  the government acknowledged the witnesses' testimony that Chichakli was NOT AN OWNER of

Samar Airlines, and not the owner of the companies which made payments on behalf of Samar Airlines. In trial

no

evident in support of defendant's ownership or control of any of these entities was provided.   The government

alleged that it was all owned and controlled by Victor Bout while Chichakli was a broker or contractor.

The rest of the verbiage used by the government to justify adding two level-increase, is self-describing text

of irrational and improper attempt to abuse the law to retaliate against the Pro-Se defendant for challenging

the prosecutor and exposing what was proven at trial as "SUBORNATION OF PERJURED TESTIMONY" and

"CONCEALMENT OF EVIDENCE AND 3500 MATERIAL" among other improper Acts.

THEREFORE;

The Two (2) point enhancement added by the prosecutor is unwarranted and should be stricken because

because defendant was never, as proven at trial.

Enhancement for an alleged loss by Aventura is unwarranted

---

The PSR added Six points enhancement for an alleged loss of $70,000 claimed by Aventura for preparation

of one of the aircraft. The government alleged in justification:

## Mitchell Dinnerstein

" Because Aventura Aviation suffered a loss of $70,000 for the preparation of one of the planes,

a six-level increase is warranted."  (PSR at #31)

THE GOVERNMENT'S JUSTIFICATION STATEMENT IS FALSE, the alleged amount of $70,000 was paid by

Aventura only for legal fees NOT IN AIRCRAFT PREPARATION.  According to the testimony of Henry Gayer

$70,000 was allegedly paid "TO LAWYERS" (See: TR - P: 402 L:22) and neither Gayer nor the government has

established that any sum of the alleged lawyer fees was "actually" paid by Aventura solely in connection with

the case's transaction, nor evidence was presented at trial to substantiate such claim and such amount.

he alleged loss of $70,000  "to prepare an airplane" is clearly "CREATED" by the government in order to

manufacture the enhancement.

IT IS IRREFUTABLE THAT Henry Gayer HAS LIED IN TESTIMONY AND PERJURED HIMSELF MULTIPLE
TIMES

at trial.  It is also irrefutable that Mr. Gayer was previously convicted for perjury. Thus; it "taking Mr. Gayer's

allegation of having spent $70,000 in legal fees, which is not necessarily traceable to this transaction in
particular

remain at doubt unless substantiated.

Furthermore; The jury verdict does not foreclose this issue as this exact issue presently before the Second

Circuit U.S. Court of Appeals. Gayer falsely testified on multiple issues and his credibility is subject to

impeachment. (See: Gov. Exhibit 3503-O at #19; OFAC-THIRDPARTY-DOC,TAB-48)

THEREFORE;  the six-level enhancement against defendant is unwarranted because the government
incorrectly

mischaracterized the alleged legal expenses of Aventura as "Aircraft preparation fee", and because the alleged

legal expenses was neither verified nor proven to exist or to have relation to the instant case; notwithstanding

the credibility issue related to Mr. Gayer who has IRREFUTABLY COMMITTED PERJURY when testified at
trial.

Enhancement for Sophisticated Laundering is unwarranted

In trial the government asserted that Chichakli provided the "BANKING INFORMATION OF AVENTURA TO
SAMAR

Airlines."  More specifically, the government NEVER ALLEGED, ASSERTED, NOR PROVIDED EVIDENCE in
support

of a "Role" the defendant's allegedly played, other than providing the detail of the bank.

## Mitchell Dinnerstein

Defendant's alleged Role of conveying bank information does not involve any alleged "Sophistication"; it merely

conveys the bank name, address, and account number - a publically available information that does not require any

sophistication to obtain nor involve any "Special or Secretive" knowledge.

AT TRIAL THE GOVERNMENT NEVER ALLEGED NOR PROVIDED EVIDENCE TO SUPPORT THAT CHICHAKLI HAD

OR EXERCISED ANY CONTROL OVER THE ENTITIES WHICH SENT PAYMENTS TO AVENTURA.

THEREFORE; the enhancement of two point is unwarranted.

Enhancement for the Alleged Violation of SPECIFIC order is Unwarranted:

The PSR enumerated a Two-point enhancement for violating OFAC's order under Section 2B1.1(b)(9) which

DOES NOT APPLY. The use of "Violating Order" as an argument result in DOUBLE PUNISHMENT FOR THE

SAME CRIME; defendant conviction is BASED on the alleged OFAC violation.

OFAC order is NOT SPECIFIC AS REQUIRED BY SECTION 2B1.1(b)(9), and it is a POLITICAL ORDER which is

outside the Scope of the U.S.S.G.

THEREFORE; the two point enhancement is UNWARRANTED and should be removed

The sentencing Court may not presume that the advisory guidelines range is reasonable. See GALL V.

UNITED STATES, 552 U.S. at 50 92007); UNITED STATES V. BROXMEYER, 699 F.3d 265, 290 (2d Cir. 2012) (The

District Court "cannot assume that a guideline sentence is warranted in particular case but rather, must make an

independent sentence determination"). Its individualized determination as to an appropriate sentence is informed

by the 3553(a) factors and the facts presented, not Guidelines. See UNITED STATES V. CAVER, 550 F.3d 180,188

(2d Cir. 2008) (The Court must form its own view of the "nature and circumstances of the offense and the history

and characteristics of the defendant.")

Accordingly; the Guidelines are only "The Starting Point and the initial benchmark." GALL, 552 U.S. at 49.

We do not start out with a "thumb on the [Guidelines] scale", KIMBROUGH, 552 U.S. 85, 113 (2007) (Scalia, J.,

concurring), especially at the expense of other statutory factors. See GALL, 552 U.S. at 59 ("the Guidelines are only

## Mitchell Dinnerstein

one of factors to consider when imposing a sentence"); Federal Criminal Practice: A Second Circuit Handbook, Gordon

 Mehler, John Gleeson, and David C. James, at 42-2(d) (11th Ed. 2011).


In this sense, the Guidelines are "Truly advisory." RITA, 551 U.S. at 367 (Stevens, J. Concurring); CAVERA,

550 F.3d at 189 (making it "emphatically clear that the Guidelines are guidelines -- that is, they are truly advisory").

KIMBROUGH makes clear that all guidelines are advisory only, and that Courts may vary from them on the basis of

categorical policy disagreements. 552 U.S. 85 (2007); See also SPERAR V. UNITED STATES, 555 U.S. 261, 263-67

(2009), CAVERA, 550 F.3d at 191-96.   Guidelines that do not take into account empirical data and national

experience "do dot exemplify the [Sentencing] Commission's exercise of its characteristic institutional role.

"KIMBROUGH, 552 U.S. at 109.

# Mitchell Dinnerstein

**From:**       CHICHALKI RICHARD AMMAR (92036054)

**Sent Date:**  Thursday, November 6, 2014 2:22 PM

**To:**          md@dinnersteinlaw.com

**Subject:**    Sentencing P: 6-10

In determining the sentence minimally sufficient to comply with section 3553(a), the Court must consider several factors contained therein. Some of these factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) " the need for the sentence imposed" (4-5) "the range established by the guidelines and any pertinent policy statements (6), 18 U.S.C. 3553(a)(1), (2), (4), (5)(6).

## 1. NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY OF THE DEFENDANT

When the Court considers the nature and circumstances of the offense and the history and characteristics of Mr. Chichakli it will become clear the requested sentence of Time Served is appropriate.
The PSR report has detailed the numerous factors which indicate why Mr. Chichakli should be treated with leniency. The report documents the work and education history of Mr. Chichakli as well as the family support network which he enjoys.

All indications from this report (PSR Part-B) point to the inescapable conclusion that this criminal event was a colossal lapse in judgment by an individual who, while surviving under the most unique and extraordinary conditions a person could face, was not diligent enough to thoroughly examine the minute details of what appeared to be a good, and rare opportunity. Mr. Chichakli never had the intention to violate the law when he engaged Samar Airlines to provide aviation consultancy service to it.

Portions of the probation report are extremely constructive when the court consider Mr. Chichakli's character. Mr. Chichakli has maintained a good relationship with his family members, and he is described as being an active parent in raising his children.

The report cites an employment history which reveal that he has served in the Armed Forces of the United States and was honorably discharged (PSR Paragraph 84, 85). Mr. Chichakli is a highly decorated war veteran of

## Mitchell Dinnerstein

the United States Armed Forces, and he is also recipient of service-connected disability.

The Court has previously received letters from people who knew Mr. Chichakli and knew his history. These letters portrays a man who worked hard to build a family, showed love and affection to his family, and must now confront the consequence of this major error in judgment.     All reports indicate first and foremost that Mr. Chichakli has been and will continue to be a devoted and caring family man.

    The United States Court of Appeals for the Seventh Circuit in UNITED STATES V. WACHOWIAK 496 F.3d 744 (7th Cir. 2007) AFFIRMED that a DEPARTURE from a  guideline sentence of 120-150 months DOWN TO 70 months

is appropriate because defendant enjoys a strong family support.

        Mr. Chichakli, despite the enormous extraordinary circumstances of his situation enjoys tremendous support of his family; thus, DOWNWARD DEPARTURE IS WARRANTED

### 2. THE NEED FOR THE SENTENCE IMPOSED

    In addressing this subsection the Court should consider, among other things, the effect the sentence will have upon deterrence, and prevention of further crimes.  The defendant respectfully suggests that when these factors are considered the requested sentence become obviously appropriate.

        Section 3553 (a) requires a sentencing Court to consider deterrence, both general and specific. As to specific deterrence, I have previously informed the Court of how this arrest has affected Mr. Chichakli and that his arrest and subsequent incarceration have seared into his mind the quest to live a law abiding life and to repay society for the harms he has caused.  However, I would add to those facts the analysis provided by some empirical studies that have been conducted by specialists in this area that support the proposition that Mr. Chichakli will lead a law abiding life once released from prison.

The studies have considered many factors in determining which defendants are most likely to become recidivist. See: USSC, Measuring Recidivism (2004).

    The first factor considered is the number of previous criminal convictions the defendant has. The study found that a first time offender has only 3.5% chance of being convicted of a crime again. Obviously, here Mr. Chichakli

## Mitchell Dinnerstein

who had no prior contact with the Criminal Justice System, has very small chance of becoming recidivist criminal.

The second factor considered is age. The study have demonstrated that recidivism declines dramatically with age. While a person over 50 years old has virtually no chance of committing another crime.

The third factor considered is employment. The study have demonstrated that of a person has maintained stable employment in the past the recidivism rate drastically lower. Mr. Chichakli has maintained a perfectly steady
employment throughout his past, including running and managing his professional service business which was one
of the most successful  public accounting practices in the Dallas area.

Another factor is family. The studies have observed that if a person has been married in the past (even if divorced) and has close ties to his present family members, the chance of recidivism is lowered. Here, Mr. Chichakli was married for nearly thirty years; he is very close with his daughter and son, as well as his siblings and remained in constant communication with them regardless of his extraordinary circumstances.

Another factor is absence of drug use. The studies indicate that those who were not using drugs immediately prior to their arrest have lower recidivism rate. Here, Mr. Chichakli never have used drugs or illicit substances in his life; and therefore, recidivism is very unlikely in his case.

The final factor is whether offender is charged with violent or non-violent crime. The studies have proven that a person sentence under fraud guidelines (among other) are the least likely to recidivate.  Here, there is not a single violent act associated with Mr. Chichakli or the crime charged; thus, he is considered among the lowest risk to recidivate.

Accordingly, when the many cited factors are considered in their entirety it is clear that Mr. Chichakli falls into the category of individuals who are least likely to recidivate. Therefore, not only does his personal history demonstrate a low chance of recidivism on his part, the empirical studies conducted by experts in the field indicate
that he has very low chance to commit new crimes upon his release from jail. When this combined with the fact that Mr. Chichakli is already a senior citizen in less than marginal health, combined with consideration of his level

## Mitchell Dinnerstein

of education, it become very clear that the possibility of him committing any other crime virtually does not exist.

A sentencing Court must also consider "general deterrence" when deciding a sentence. Here again the experts have conducted many studies and they routinely found NO EMPIRICAL RELATIONSHIP BETWEEN THE LENGTH OF THE SENTENCE AND SPECIFIC OR GENERAL DETERRENCE.   In all categories of crime from white

collar to drug offenses, from violent crimes to larcenies severe sentences have proven not to deter crime.

The studies showed however; that the lengthy sentences do increase the rate of recidivism.  See: Lynne M. Vieraltis et. al.;  The Criminogenic Effect of Imprisonment: Evidence from State Panel Data 1974-2002, 6 Criminology & Pub.   Pol'y 589, 591-93 (2007), U.S. Sent'g Comm'n Staff Discussion Paper, Sentencing Options Under the Guidelines 18-19 (Nov 1996), available at http://www.ussc.gov/SIMPLE/sentop.htm

Indeed, the scientific research shows no relationship between sentence length and deterrence. The general research finding is that "deterrence works," in sense that there is less crime with a criminal justice system than there would be without one. But the question for this Court is "marginal deterrence," i.e. whether any particular quantum of punishment results in increased deterrence and thus, decreased crime.  Here the finding are uniformly negative: there is no evidence that increases in sentence length reduces crime through deterrence.

Current empirical research on general deterrence shows that while CERTAINTY of punishment has deterrent effect, "increases in severity of punishment DO NOT yield significant, if any, marginal deterrent effect .... Three National Academy of Science Panels reached that conclusion, as has every major survey of evidence." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of Research 28-29 (2006).

In-fact studies of white-collar crime have proven that offenders given terms of probation instead were no more or less likely to reoffend than those given prison sentences. See: David Weisburd et. al., Specific Deterrence in a sample of Offenders Convicted of White Collar Crimes, 33 Criminology 587 (1995).

The Commission itself has found that "[t]here is no correlation between recidivism and guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rate are similar. While surprising at first

## Mitchell Dinnerstein

glance, this finding should be expected.        The Guidelines' offense level is not intended or designed to predict recidivism." See: USSC, Measuring Recidivism at http://www.ussc.gov/publicat/Recidivism_General.pdf.

When considered under these parameters the defendant respectfully submits that a prison sentence of time served is sufficiently meets both the requirements of specific and general deterrence. This sentence requires the defendant to spend considerable amount of time in jail, and he indeed been imprisoned for more than 23 months which is serious punishment to a person nearly sixty years old, a honorably discharged military and civilian servant of the United States government, and a disabled war veteran with no criminal record.

The defendant, Mr. Chichakli, has been incarcerated for approximately two years under very difficult conditions that exceed the standard hardship of a federal prison.   First, in a solitary confinement in Australia for six months and then at the Metropolitan Detention Center (MDC) for approximately one and half year.

It is the defendant's position that after considering all of the relevant factors of Mr. Chichakli and the case that was heard before this Court, the law as it is today and the empirical studies done in this area that a sentence of Time Served would be reasonable herein.        This sentence would meet the court statutory responsibility "to impose a sentence sufficient but not greater than necessary to accomplish the goals of sentencing" as stated in Kimbrough V. United States, 128 S. Ct. 558, 571, 169 L.Ed 481 (2007).

It is the defendant's position that a recommendation of a guideline sentence failed to take into consideration the individual characteristics of Mr. Chichakli and his "ATYPICAL" case.   This is not only improper in this day and age but violates the dictates of the Supreme Court.   As previously stated, "no chart of numbers will ever fully contemplate, quantify, and cipher the endless variations of human experience. While it might provide a normalizing force in sentencing, we cannot, with a system of points and categories, reduce justice to a universal formula." United States V. Coughlin, No 6 Cr. 2005, 2008 WL 313099 (W.D. Ark Feb. 1, 2008).

In Gall the District Court sentenced the defendant to a period of probation. The Guidelines had suggested a sentence from 30-37 months.  The District Court there commented on the defendants' efforts at rehabilitation during the period of time between the commission of the crime and sentencing date.        The Eight Circuit determined that the sentence was an "extraordinary" variance from Guidelines and remanded for re-sentence. The United States Supreme Court disagreed.   Finding that the Circuit Court's analysis was constitutionally

## Mitchell Dinnerstein

flawed, the Court reemphasized the position that the role of Guidelines is merely advisory. As in Gall, the Court here is presented with an individual who has been sufficiently punished and who will now begin to live a new chapter in his life.

## Mitchell Dinnerstein

| | |
|---|---|
| **From:** | CHICHALKI RICHARD AMMAR (92036054) |
| **Sent Date:** | Thursday, November 6, 2014 2:22 PM |
| **To:** | md@dinnersteinlaw.com |
| **Subject:** | Sentencing P: 11-15 |

CHICHAKLI HISTORY AND CHARACTERISTICS

Richard Chichakli has been always an outstanding member of the community, an exemplary citizen, a loving family man, successful entrepreneur, a dedicated civil servant of the United states government, a superb soldier of the United states Armed Forces, a caring coach, teacher and professor, and a responsible practicing professional.

Richard Chichakli is a highly decorated and honorably discharged veteran of United States Army and whom had proudly served, and never hesitated to placing his life on the line to defend and protect the United States, the Constitution, and his fellow citizen.  He is a disabled Veteran with a compensable service connected disability. He served during both, war time and peace time at several units in various capacities and he had always received the highest levels of commendations by the commanders.

Chichakli was also a civil servant of the United States government, he served at United States Department of Justice and in other departments and his service records are impeccable.

As the civilian, Chichakli's service to the community is unmatched.  As a certified Public Accountant, he served his community, his State of Texas, and hundreds of small and medium-sized businesses throughout the United States. In 2001 Richard was selected from among 300,000 of practicing public accountants and auditors in the United States to participate in designing the computerized CPA exam, he volunteered and proctored the CPA exams, he served nearly 1,000 clients of individuals, small and medium businesses throughout the United States in his public accounting and tax practices and which was always given the best rating in peer review and by the regulators.

Richard Chichakli has a passion for learning and spent nearly 48 years in schools. He earned academic,

## Mitchell Dinnerstein

professional, and vocational degrees in many disciplines, including 7 graduate and post-graduate degrees.

Chichakli has also held many licenses on the Federal and State levels.

Richard Chichakli loved to teach and to provide training to others despite his busy schedule. He joined the faculty

of several North Texas Universities where he taught accounting and information system, he created programs to train

CPAs and to provide them with Continued Professional Education, he even created learning software in Mathematics

and Chemistry and which he offered for free.

Charitable work was an integral part of the every-day in the life of Richard Chichakli. He offered free tax service

to the people in hardship to assist them in fulfilling their tax obligations and to helping them resolving IRS issue, he

created programs to feed and clothe the homeless through his own managed non-for profit organization, and through

which he was able to extended help to those who needed help worldwide.

The Court at the Southern District of New York deemed a downward departure from the Guidelines appropriate

in imposing sentence considering "the positive in defendant's character and background."  In UNITED STATES V.

ADELSON 441 F.Supp.2d 506 (S.D.N.Y. 2006) the Court imposed a a sentence of 42 months where guidelines call for

"life", in part based on Defendant's characteristics and past history. Here, CHICHAKLI'S CHARACTERISTICS AND

BACKGROUND WARRANT A DOWNWARD DEPARTURE consistent with "ADELSON"

### NO PRIOR CONVICTION

Richard Chichakli lived all of his life as a law-abiding citizen, he was never indicted of any crime or wrong

doing throughout his entire life. Some people could say that for not being caught, but not in the case of Chichakli

whose life and his affairs were microscopically examined for more than 10 years and that examination yielded no

chargeable wrong doing.

# Mitchell Dinnerstein

A CITIZEN UNDER CRUEL AND UNUSUAL CIRCUMSTANCES

Richard Chichakli was placed under sanctions by OFAC in 2005 in an extra-judicial action that denied him any

and all rights of citizenship.  The government seized Chichakli's assets, closed all of his businesses, took all of his

properties, released his employees, and denied him access to his funds and his records which are both needed to

defend himself.  The life Chichakli built throughout his life was suddenly destroyed without prior notice and without

a chance to present his side of the story before watching all of his life dismantled.    A trauma of an extraordinary

magnitude which scared his life forever, and more than 10 years of investigation which result in none of the alleged

causation be substantiated as it was revealed at trial by the testimony of the FBI and Homeland Security.


Chichakli suffering was immense, and the circumstances are unquestionably extraordinary; thus, creating

an inviting atmosphere to a lapse of judgment which consequently resulted in Chichakli ending up before this

Court charged with a crime.


Defendant was virtually forced to leave the United States and his home, his own home in which he was no-longer

allowed to live, and he lived in exile abroad in order to do one thing, to stay alive and to avoid violating the sanction.

Chichakli had to leave because anything he does would be a violation of OFAC sanction or a conspiracy of a sort.

Chichakli who was not accused of a crime whatsoever was put to a slow death, was punished far more severely than

a convicted criminal would have.

The Court in the Southern District of New York found in UNITED STATES V. GAIND, 829 F.Supp. 669

(SDNY, 1993) that the destruction of defendant's business WARRANT A DOWNWARD DEPARTURE.    Here, it is

IRREFUTABLE that OFAC action against Chichakli caused the complete destruction of Chichakli's business, family,

and LIFE AS A WHOLE. Therefore, a downward departure is warranted consistent with "GAIND" precedent.

## Mitchell Dinnerstein

---

### THE REGULATIONS DID NOT EXIST WHEN THE ALLEGED CRIME WAS COMMITTED

Richard Chichakli was sanctioned by OFAC in April 2005, and he was accused of violating CFR 31 in the matter

upon which he was convicted. The said regulations did not exist in 2005, did not exist in 2006, and it did not exist

until 2007 as per the testimony of OFAC's representative at trial . The transaction of Samar Airlines is dated to

June 2007, the transaction commenced prior to the regulation under which Chichakli was convicted.

In the UNITED STATES V. BARIEK 2005 WL 2334682, (E.D. Va, 2005)(Unpub.) the Court departed downward

from guidelines because defendant "was not aware of the regulation." Here, it is irrefutable that regulation under

which defendant was convicted is "Ex Post Facto" to the sanction and offense; simply it did not exist and this is a

fact the Court may consider to justify the "Time-Served" judicial discretion in sentencing.

THEREFORE; A DOWNWARD DEPARTURE IS WARRANTED consistent with BARIEK

### FURTHER CAUSES WARRANTING DOWNWARD DEPARTURE

Mr. Chichakli has been diagnosed by two expert to be suffering of Obsessive Compulsive Disorder (OCD); for

which he was assessed and properly diagnosed. Thus; Mr. Chichakli is possibly also suffering from yet another

serious mental disorder which is Post Traumatic Stress Disorder (PTSD) for which he was not assessed.

Mr. Chichakli is a war veteran, a "Desert Storm and Desert Shield "soldier of the United States Army where

he served at different posts and in various capacity. Chichakli served as part of the United States' Rapid deployment

Force, 18th Aviation Corp, 1/58th Aviation Regiment forward deployed at Fort Campbell, Kentucky in support of the

101st Airborne Division. Such unit of the Armed Forces endures an extraordinary stress given for its unique role as

part of the Rapid deployment Forces. As Chichakli's ex-wife testified at trial, the defendant was always on-call and

was always gone; unannounced, on long missions to operation theaters around the world.

The stress of Chichakli's military duty at war zones was further compounded with his duty as an Air Traffic

Controller; which is known to be one of the most stressful job in the world, where there never a room for errors.

## Mitchell Dinnerstein

---

Chichakli is a graduate of the FAA Academy - Air Traffic Control School and the United States Army Aviation Center,

Fort Rucker, Alabama, and he held an FAA's Certified Tower Operator (CTO) rating among other civilian and military

ratings in Air Traffic Control.

Although PTSD is commonly associated with military duties, it is in fact more common in civilian life away from war zones. Chichakli's life was filled with extraordinary traumatic events since his early childhood. His early years was marred by the events associated with to the political lives of his father and uncle, and as he grew older he watched his life getting dismantled by various forces and in different countries and years. Thus; ending with the events which unfolded in 2005 with a knock on the door at 6 AM with dozens of heavily armed government agents with their weapon drawn; a simple knock ended the entire life Chichakli has built throughout all of his years.

It is impossible to imagine the impact of such violence, an unexpected sudden death, unannounced, and almost impossible to believe or comprehend.

The trauma of OFAC's action is of unimaginable magnitude and it is lived and re-lived by Chichakli everyday,

for the last 10 years as a man without a family, a person who cannot buy a sandwich without government approval.

The trauma that seems to be part of Chichakli's life did not end with OFAC's actions, but it was further compounded by the medieval type of tortures Chichakli suffered at the hands of the Syrian intelligence in 2006, and yet just to later witness the life he build in Australia, again, comes to a sudden-death in January 2013.

Chichakli was never assessed for PTSD and never received medical care in association with this disorder. He has to always carry his pain with him silently as he continued to live the trauma of his lost life everyday, in every thing he needed to do to stay alive.

In UNITED STATES V. ADELSON 441 F.Supp.2d 506 (SDNY, 2006) the Court imposed a sentence of 42 months where the guidelines call for life, on part because defendant would be making restitution for a fraud of $50 millions for life. Here, Chichakli is been under the most severe punishment for 10 years, a punishment that is destined for life or as long as politics lives. DOWNWARD DEPARTURE IS WARRANTED consistent with ADELSON

## Mitchell Dinnerstein

OFFENSE AND/OR OFFENDER IS "ATYPICAL"

U.S.S.G. Ch.1, Pt A, Comment 4(b) provides that (Departure proper where conduct "Atypical" and "Significantly differs from the norm" of conducts covered by the Guidelines); the United States Supreme Court mandate in UNITED STATES V. RITA, 127 S. Ct. 2456 2007 WL 1772146 (June 21, 2007) A TRADITIONAL DEPARTURE IS JUSTIFIED, IF THE OFFENSE OR THE OFFENDER IS "ATYPICAL" AND THUS NOT WITHIN THE "MINE-RUN OF SIMILAR" CASES. Slip op. at 4, 20. See also UNITED STATES V. Paul 2007 WL 2384234 (9th Cir. Aug. 17, 2007) (Unpub.);  UNITED STATES V. POLITO (5th Cir. Jan. 31, 2007) (Unpub.)

Here, the "ATYPICAL" is clearly defined as in Richard Chichakli being the only United States Citizen that have ever been subjected to sanctions that are designed for "Foreign Countries and national thereof" as defined in Section 1701(a), thus, the defendant is "ATYPICAL".

THEREFORE; A DOWNWARD DEPARTURE IS WARRANTED IN ACCORDANCE OF THE MANDATE OF THE UNITED STATES SUPREME COURT.

## Mitchell Dinnerstein

| | |
|---|---|
| **From:** | CHICHALKI RICHARD AMMAR (92036054) |
| **Sent Date:** | Thursday, November 6, 2014 2:21 PM |
| **To:** | md@dinnersteinlaw.com |
| **Subject:** | Sentencing P: 16-20 |

.

MANIPULATION OF INDICTMENT

The United States Sentencing Guidelines; U.S.S.G. Pt. A.4 states "a sentencing Court may control any inappropriate manipulation of the indictment through use of its departure power." Judge Weinstein J. of the E.D.N.Y. found that a 5-levels departure from level 20 to 15 was warranted for such a cause in the money laundering case UNITED STATES V. GAMEZ, 1 F.Supp. 2d 176 (E.D.N.Y. 1998).

The issues related to the indictment in Mr. Chichakli's case are irrefutable. Government witnesses admitted at trial that perjuries (see Monica Testimony), and more than 35 errors (see Larsen testimony) existed in the indictment. The charges were further manipulated as the prosecutor abandoned his allegations that Chichakli created Samar Airlines in 2004, and owned and run the company since then.

During Trial the Court ordered the prosecutor to release the JENCKS material, namely the statements of Agent W. Hoffman and about which he testified, but the prosecutor disregarded the court's order and these are the facts supported by the records.

In UNITED STATES V. SANDERSON, 110 F.Supp. 2d (N.D.Cal 2000), the Court departed 4-levels downward because the government failed to disclose evidence. Here; the government failed to disclose important evidence which could be Brady-Material, namely the discovery associated with the two meetings held at the United States Embassy in Tajikistan between the owner and Directors of Samar Airlines and the U.S. Government Officials.

The records clearly reflect that defendant requested the disclosure of this material and the Court ordered the same; thus, the prosecutor failed to disclose and elected to disregard the Court's order. Certainly, the records reflects that other evidence were also withheld such as the statement created by Agent Hoffman, a 3500 material

## Mitchell Dinnerstein

which was also also ordered disclosed by the Court but the government elected to withhold these evidence.

Thus; Downward departure is warranted consistent with "SANDERSON" for the undisputable government's

failure to disclose.  Such downward departure is further warranted as the Court has found in UNITED STATES V.

NOLAN-COOPER 155 F.3d 221 (3rd Cir. 1998).

### DEFENDANT IS OF AN OLD AGE AND REPRESENT LOW RISK OF RECIDIVISM

Chichakli is almost 56 years old with no prior convictions; thus, as explained earlier in this

memorandum the studies shows that a person of such age and characteristics is unlikely to recidivate.

THE FEDERAL COURTS ANONYMOUSLY AGREED AND IMPOSED SENTENCES BELOW GUIDELINES in case where

defendants' ages and characteristics are similar to those of Mr. Chichakli. In UNITED STATES V. BARIEK

2005 WL 2334682 (E.D. Va. Sep. 23, 2005) (unpub.) the Court imposed 18 months sentenced pointing that

guidelines range of 37-46 months is greater than necessary, in part because "this is defendant's first criminal

offense The defendant arrived to the United States in 1989 and later thought and obtained his U.S. citizenship

and since his arrival maintained stable employment, has supported his family, and has become a well respected

member of [his] community.)

Here, the life of Mr. Chichakli presents far exceeding accomplishments than those pointed by the court in

justification for below guidelines sentence. Mr. Chichakli is an outstanding member of the CPA's; the top elite

accounting and audit professionals in the United States, he helped thousands of clients to grow and care for their

businesses and attain tax compliance. He is a dedicated parent who has raised and nourished his two wonderful

children into productive members of the society, he served the United States of America as an employee of the

United States Department of Justice, and he served the American people as an employee of the United States

Department of Defense; a highly decorated and Honorably discharged soldier of the United States Army who is,

and forever will proudly carry the service-connected disability he received while defending the United States of

America and the American people.

## Mitchell Dinnerstein

In UNITED STATES V. LUCANIA 379 F.Supp. 2d 288, 297 (E.D.N.Y. 2005) "Post-BOOKER Courts have noted

that recidivism is markedly lower for older defendant." See also UNITED STATES V. CARMONA-RODRIGUEZ 2005

WL 840464, 4 (S.D.N.Y. Apr. 11, 2005)(Unpub.) where the Court sentenced a 55 years old defendant below

guidelines citing the low probability of recidivism.  See also: UNITED STATES V. CARVAJAL, 2005 WL 476125

(S.D.N.Y. Feb. 22, 2005) (Unpub.); SIMON V. UNITED STATES 361 F.Supp. 2d 35 (E.D.N.Y. 2005); UNITED STATES

V. NELLUM, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005) (Unpub.); UNITED STATES V. WADENA 470 F.3d 735 (8th Cir.

2006).

### DEFENDANT IS CONVICTED AS AIDER AND ABETTOR

The Court has found that DOWNWARD DEPARTURE PROPER FOR AIDER AND ABETTOR because guidelines

did not contemplate such circumstances. See UNITED STATES V. POSTERS 'N' THINGS, 969 F.2d 652 (8 Cir. 1992)

Thus; defendant was found guilty by the trial jury SPECIFICALLY as Aider and Abettor, therefore, a downward

departure is appropriate in the sentence of Mr. Chichakli and consistence with POSTERS 'N' THINGS

### DEFENDANT ATTEMPTED TO COOPERATE

The records clearly reflects that defendant has attempted to cooperate with the government on countless

occasions, and he did not spare any efforts to assist the government in resolving the issues related to instant case

and to other matters which are of high-importance to the government.  These facts are irrefutable.

In fact the government expressly admitted during the Court conference which was held on June 14, 2014

that Chichakli has in fact contacted the FBI and DEA agents, as well as Officials of the United States Department

of Justice and The United States Embassy in Moscow on numerous occasions in 2007, 2008, 2009, and 2010. The

government further conceded that Chichakli sent communications and documents to different U.S. Law

## Mitchell Dinnerstein

enforcement

agencies concerning subjects of critical importance to the U.S. Government. (See: 6/14/14 Conference Transcripts

Page: 50 Lines: 11 to 24). It is unquestionable and irrefutable that Chichakli has made endless efforts to cooperate.

Thus; in UNITED STATES V. FERNANDEZ, 443 F.3d 19 (2nd Cir, 2006), the United States Court of Appeals for

the Second Circuit decided:

We agree that in formulating a reasonable sentence a sentencing Judge must consider

"The history and characteristic of the defendant" ... AND SHOULD TAKE UNDER

ADVISEMENT ...  THE CONTENTION THAT A DEFENDANT MADE EFFORTS TO

COOPERATE, EVEN IF THOSE EFFORTS DID NOT YIELD A GOVERNMENT MOTION

 FOR DOWNWARD DEPARTURE")

   It is undeniable that defendant has made all possible effort to cooperate in this case, he responded to the DEA

request for meeting and held two meetings with the DEA and the FBI at the United States Embassy in Moscow, he

also had several telephonic conferences with the DEA, and with the U.S. Law enforcement and Diplomat officials

and offered all possible assistance and cooperation to the government.

Therefore; DOWNWARD DEPARTURE IS WARRANTED  consistent with the mandate of the U.S. Court of

Appeals for the Second Circuit in "Fernandez, 443 F.3d"

## C O N C L U S I O N

FOR ALL OF THESE REASON, a non-guideline sentence under Section 3553(a) and a downward departure

is more than justified, and would be consistent with how other Courts have approached sentencing under the

imperfect Guideline regime. See e.g. MARSH, 820 F.Supp.2d at 351-360 (sentencing Employee defendants,

including Salespersons who contacted investor victims, to terms of 24, 18, 3, and 12 months where Guidelines

## Mitchell Dinnerstein

---

ranges were from 120 to 240 months for fraud losses approaching $20 millions); HENRIK, 2010 U.S. Dist. Lexis,

at *20 (varying downward under 3553(a) to 18 months from guideline range of 51-63 months for fraud offender

because although loss [$6.8 millions] was high, sentencing his as of he is wholly responsible for the total loss

would exaggerate his culpability"); PROSPERI 686 F.3d 47, 50 and n.11 (affirming 3553(a) variance imposing

Six months home confinement, down from guidelines range of 87-108 months in light of:  [1] loss amount [$5.2

million] (compared to $70,000 in Chichakli's case) as poor, unfair proxy of culpability, [2] relative lack of harm,

and [3] lack of personal enrichment or benefit from fraud).


    Here, it is clear that Mr. Chichakli case fall within the realm of PROSPERI, he has been imprisoned for

more than 22 months, and has been suffering for the past 10 years; thus, he prays that the Honorable Court

find that a Sentence of Time-served would be appropriately situated.


DATED:  Nov/12/2014
             Brooklyn, NY


                            Respectfully Submitted


                            Richard A. Chichakli (Pro-se)
                            Defendant

11/6/2014